Oyez, oyez, oyez, all persons having business before the Honorable, the United States Court of Appeals for the District of Columbia Circuit. I remind you to draw near and give your attention, for the Court is now sitting. God save the United States and its Honorable Court. Please be seated, please. Case number 17-5089, Brian Huffman, appellant v. Kirstjen M. Nielsen. Mr. Montalvo for the appellant, Mr. Shaffer for the appellee. Good morning. Good morning, Your Honor. May it please the Court, Mr. Montalvo for the appellant, appellate officer Huffman. In this case, we have a sailor of the quarter and a man who joined to serve his country with a 12th grade education and two points above the ASVAB score with a 42, and as the Court, I'm sure, is aware, the scores go from 1 to 99. So, a simple man, working man, and he just wanted to serve his country. His record, as reflected in the joint appendix, is meritorious. He did a good job. He served his country faithfully. In the final two months of his service, things precipitated, and it is clear from the record that the command abused their authority, and the District Court found that there was arbitrary and capricious action on behalf of the Board for Creston Military Records to two prongs, but the appellant has a concern with at least one part of that analysis. The access to counsel and the deprivation of the statement are contained within the regulations. That's not in dispute. Mr. Huffman, or Petty Officer Huffman, was denied those procedural rights in his departure from the Coast Guard, which was imminent even considering his EAS, end of active service. The Court, however, in making its determination that there was harmless error, focused that harmless error on the fact that at some subsequent discharge review board, that some relief had been granted. And then somehow his discharge had been converted to an honorable, and therefore he was not entitled to the protections that he could avail during the process. We believe that to be an error. We believe that the point of review is at the time of the alleged inappropriate action. That's what BC&R should have reviewed. The point of time that that was was during the discharge process, and that's where the errors in the case for him have accrued. Can I ask a framing question, which is, do you disagree that what's ultimately at stake here is whether his reenlistment status should have been changed, and that's what's before us? Or are you challenging something other than the change of his reenlistment status? Well, there were the non-change of his reenlistment status. So the reenlistment code. Yeah. And the associated characterization of his separation are the centerpiece of the case. Yes, Your Honor. Okay. No, I just wanted to make sure that that's really the core of the dispute that's before us. Yes, Your Honor. So when looking at this, you know, as the court indicated. Can I just follow up on that? Yes, Your Honor. How is his separation from the service before us at this procedural posture? I didn't understand the question. So I thought that what the correction that was sought to his military record was his reenlistment code and his rank. That's correct. Yes, Your Honor. So how is whether or not his discharge was procedurally proper, how does that relate to that claim? I understand the question, Your Honor. So there are two general ways to be discharged from the service. One is sort of its natural extension. You are enlisted, and in this case, Petty Officer Huffman is enlisted. He signs a contract and then fulfills that contract term. So in this case, he was a couple months away from fulfilling that particular contract term. And the command made a decision to discharge him prematurely. Now, there are a number of reasons why someone would be discharged prematurely. One of them could be medical. One of them could be the good of the service. Something's going on. In this case, it was alleged misconduct. And it was that alleged misconduct in that very short period of time that they alleged was the basis upon which he had to leave the service early. And as a result and consequence of that alleged misconduct, then they could give him a certain discharge, which was a lower level discharge, not an honorable, full honorable discharge. They could give him a reenlistment code. They could give him a characterization of service. And that all falls onto what's called the DD-214, the final discharge document. And then that discharge document, this DD-214, is what carries with him for the rest of his life, because that's the official record of service. So whenever somebody looks at this DD-214 and they see the narrative or the characterizations there, it affects their employment and a number of different other issues, security clearance, et cetera. So that's all connected because it's one of the actions that they take in that process based or premised upon the trigger for the discharge, which in this case they allege to be this misconduct. Does that answer your honest question? So any error that occurred at the time of the discharge that then is reflected on the DD-214 also affects his possibility for reenlistment the same as the reenlistment code does? Is that your theory? Yes, Your Honor. So there are a few different—let me see if I can find an appellate record—the Joint Appendix. Okay, if you go to Joint Appendix 0268. So in the middle of the page, it lists out character service, separation authority, separation code, reentry code, narrative reasons. And so this, if you were to look at his DD-214, these are different blocks on his DD-214 that are entries that are filled in. The reenlistment code entry, RE-4, indicates to the military and anybody who will look up the code that not eligible for reenlistment. So the designation of that code effectively bars him from entering into any other service. It's a non-waivable code. So at the end of the day, you would need to show that the errors that you pointed out would have had an effect on his reenlistment code? That's correct, yes, Your Honor. The underlying basis upon which they were justified in granting this code we believe not to exist. We believe that the allegations that, for example, he was not where he was supposed to be is without basis in fact, and that Petty Officer Huffman substantiated that very well in the record, even though he was acting pro se. There was a third submission that was attempted to be made with counsel eventually because he wasn't able to succeed with the BCNR, and there was new evidence that should have been considered, audio tapes showing that their command was lying. I believe my time is getting close. So there was new and material evidence as contained in the record that was being brought because the BCNR kept saying, well, you haven't given us enough. And then the third time that they presented this new material evidence, they disregarded it. But we believe that in the record it is very clear that the basis upon which they said he was being discharged was without merit. The senior officer told him to be at a point of place. He had been at that point of place. The record is clear that he was there. A subordinate person told him to be somewhere else. That's a conflict. The way it works in the military is the senior officer, when they make that order, that's the order that you need to follow. He communicated this effectively. We have the phone records. We have history. We have the discussions and statements by parties. There was no dispute of fact that he was doing what he was supposed to be doing in the command, but the command disregarded all of that. So the nature of the decisions was not based off of the facts. It was because they did not want Petty Officer Huffman in the military anymore. And it is not a valid basis to say that now that his characterization is honorable because it was upgraded by the Discharge Review Board that, you know, there's no longer relief to be granted or consideration of these violations, because if that's the case, then he should have been allowed, if there's no misconduct here, he should have been allowed to run to his end of active service as he would have normally, and he would have received that RE1. So either it's a misconduct and, you know, they have a proper basis, or there is no misconduct and he should have received the one. So he should have either ran to his EAS and been eligible to reenlist. Whether he was reenlistable is not the question. It's whether he was eligible to reenlist. So here the determination that he was ineligible to reenlist was not based off of the facts that were in existence and he was also deprived of the substance of due process rights, you know, on his way out the door, particularly as it relates to counsel, because had counsel, learned counsel, had this before, they could have addressed these issues and most likely resolved this in favor of Petty Officer Huffman. All right, thank you. Let us hear from Appellee and we'll give you a few minutes on rebuttal. Good morning. Good morning. May it please the Court. Assistant U.S. Attorney Dan Schaefer for the Appellee Department of Homeland Security. Your Honors, the Coast Guard had decided that Mr. Huffman was no longer suitable for military service. In the few months that preceded his discharge, he was insubordinate. He was disrespectful to his superior officers. He disobeyed direct orders multiple times. He was absent without leave. He committed a number of military offenses. These are, in the military, very serious matters. And it began first with his violation of the first military no-contact order that the Coast Guard had issued after Mr. Huffman was arrested for battering and kidnapping his wife. When Mr. Huffman sought relief from the Board of Corrections, the Board concluded that the discharge and the RE-4 re-enlistment code that counsel had referenced during his argument was a direct and natural consequence of Mr. Huffman's misconduct. And the Board further found that Mr. Huffman had not proven by a preponderance of the evidence, which was his burden in that review, that the discharge was unjustified, erroneous. So let me ask you, what about these procedural objections he has raised? Yes. I want to clarify one point on that. The Board did not find, as far as I'm aware, that the procedural protections in the manual did not apply. That was a finding that the district court made, but that was not a finding that the Board made. The Board found that looking at the text of the regulation, for example, the, quote, opportunity, end quote, to consult with counsel and to provide a written statement, that the time that Mr. Huffman had did not violate the text of the regulations. So you're saying the regulations only gave him three days? The regulation doesn't specify how long. Right. So are you saying that he was never told that he had five days to submit his statement? No, I'm not saying that. His commanding officer... So the record shows that he was told he had five days? The record shows that he was told he had, I believe, three days. The five days was in a communication between the Coast Guard discharge officials. One of the officials who was involved in the discharge said, you should give him five days. But what was communicated to Mr. Huffman was, you get three days. And it's undisputed that they didn't give him the three days. He got two, even though he's told he got three. Yes, correct. All right. So, one, he didn't have the time he was entitled to have, even under the reduced period, to prepare his statement. And the board acknowledged that. Yes, Your Honor. And then the second point is consultation with counsel. That's correct. His position is his counsel was too busy and didn't have time to look at his statement. That's correct, Your Honor. So, what is the military's definition of consult in the context of consult with counsel? The military's position is that the regulation itself doesn't specify a specific number of days. And here, what the board's decision hinged on was the fact that the board acknowledged that he didn't have the full three days. But the board nonetheless concluded that it was that any error in the discharge process, which the board acknowledged it appeared that there were errors, didn't matter, didn't affect the outcome because, although the discharge officials didn't consider the rebuttal statement, the board certainly did. So, before we get to that, I do have a question about harmless error vis-à-vis the counsel opportunity requirement as opposed to the requirement about a statement. But putting that to one side, just on the interpretation of whether the counsel opportunity requirement was honored or breached here, how was it honored if it says you're supposed to have an opportunity to consult with a lawyer, and then it goes on to say the member requests counsel in what is not available, the commanding officer must delay discharge proceedings until such time as counsel is available, which seems to indicate that it's not just formalistically an opportunity in the sense that everybody has an opportunity. I have an opportunity to consult with counsel right now because I can turn around and use my cell phone and call a lawyer. But the question is, is it a meaningful, bona fide opportunity? And when you're told you have three days to do something and it turns out you're not given those days, how does that square with what seems to me to be a requirement to give an opportunity to consult with a lawyer? Well, he did have an opportunity. He had two days. So it wasn't that he had no opportunity whatsoever. So what if he's told you have three days, and then at the end of day one he gets a call that says, you know, actually it's one day, now it's 1155, so you've got five minutes. By your understanding, that's an opportunity. You could call somebody within five minutes. Is that an opportunity to consult with counsel? Well, it's something that's always going to depend on the facts of the case. And on those facts, would it be an opportunity? Five minutes? Yeah. Well, that's. It is. Formalistically, it's an opportunity. And that's the explanation I just understood is it counts as an opportunity because it's actually physically possible to make a call. That's right. And if you take that to the logical conclusion of if it's only five minutes, then, yes, that is theoretically possible. But here, as I said, it was two full days. And the Board's decision notes that he had everything else going on during this time. The problem is he didn't know ex ante that he was going to have two full days. That's right. He finds that out later, right? That's right. After he's told he's going to have three. I'm just trying to understand what the government's understanding is of an opportunity to consult with counsel. It seems, I mean, I absolutely want to hear your position on this, but I guess it seems like you could reasonably say that it's a bit rich to say you have an opportunity as long as it's physically possible to call an attorney. Well, this is. Especially when it says later if counsel's not available, have to delay the proceedings until such time as counsel is available. Yeah, this is an area where, as the government noted in its brief, a significant amount of discretion is entitled to the Board to interpret its own regulations on the facts of a given case. And here that's what the Board did. And although the Court may have done it differently, or although Mr. Huffman may have a different interpretation of what that opportunity demands, the Board's interpretation is not on the face of the regulation incorrect or erroneous. It was the Board's interpretation of its own regulation in the context of a discharge proceeding of a service member who had committed continual misconduct over a period of months. Can I ask you this question? So just assume for purposes of argument that we don't agree that there was an opportunity here. What then? What's the government's position as to what should happen then if this aspect of the procedural requirements weren't honored? Well, that's the problem here because if the court were to remand, there's nothing more for the Board to consider. They address this issue in their decisions as with the other arguments and allegations that Mr. Huffman raised. So under the discretionary APA review that we have here, where the Board has articulated a clear and very detailed explanation of its decisions, they've satisfied the requirement for the review at this point. What I'm trying to understand as well is just hypothetically counsel, he talks to an attorney and the attorney says, I don't have time to look at your statement. Just hypothetically think of the greatest lawyer in the world who looks at that statement, looks at the facts of this case, and you and I can come up with some hypotheticals that might put a slightly different cast on some of the events, maybe not all, but some. So why would it be that he would have no opportunity to present what I'll call a supplemental statement to the Board to consider upon having the benefit of consultation with counsel? Well, that's exactly right, Your Honor, and he did. Because if Mr. Huffman had wanted to retain a lawyer during the Board's review, he had an opportunity to do that. So can I just be clear, the opportunity for counsel is an opportunity to retain counsel? It's an opportunity to consult with counsel, I think, is what...  I believe that's no. My colleague from Coast Guard Safety said no. I was surprised to hear that, all right, that a service member wouldn't have access to government counsel, basically. So your point is then, I mean, it's moving to harmless error here, that he had every opportunity with counsel to submit whatever he wanted, and that was before the Board. Yes. And that's what the Board stated. I'm just repeating the Board's rationale. So that's the part that I wanted to focus on was harmless error. I'm not sure about that because I think that there's generally a standard of the APA that the challenger has to show that an error was prejudicial. And that's one way that we ordinarily review asserted errors in an administrative proceeding is to determine whether even assuming an error did it result in prejudice. So there is a harmless, traditionally a harmless error component that attends APA review. I wasn't sure whether you were relying on that because another way to look at it is, did the agency itself conclude in its review that any error was harmless? Now, as to that, I saw that the agency did that with respect to the statement. I didn't see that the agency did that with respect to the counsel component of it. I might be wrong. You might be able to point me to something that shows otherwise. But as I saw the record, the determination made was that with respect to the statement, any error was harmless. But with respect to the opportunity for counsel, the resolution was that that was actually honored. It wasn't breached, and we never get to the question of harmless error. That wouldn't mean that you couldn't argue on judicial review that any asserted error was non-prejudicial. But I wasn't quite sure what your harmless error argument was with respect to the counsel component. Which of those two types of arguments you might be making? So there's a two-part answer to your question, Your Honor. The first is, I wanted to make that distinction as well, is that when we're talking about harmless error, there are really two separate levels of that error. There's the board's own determination that there was harmless error during the discharge proceedings, which is what the board found, which is a separate issue from whether any error by the board was harmless. And the government's position is that there's no error by the board that would constitute harmless error. So when I'm talking about harmless error, I'm referring to the board's reasoning that any error that occurred during the original underlying discharge proceedings was harmless because— But did the board say that with respect to counsel opportunity? Because I thought the board said that with respect to the statement. There's a paragraph here in the second board's—the second final decision by the board is at JA 254. And this is paragraph 9. And they do refer to both under Article 12B, 18E of the Personnel Manual. In effect, a member being separated with a general discharge from his conduct was entitled to consult an attorney and to, quote, have an opportunity to make a written statement. And then the regulation does not mandate a particular number of days for this opportunity, quote, opportunity. And the—so the board is discussing both of these issues in this paragraph. And if you look at the way the regulation is set up, those two paragraphs, opportunity to consult with counsel and then the opportunity to prepare a written statement, they really do go hand in hand. And so as I read this, they're addressing both issues, even though the final sentence says, it appears that the applicant may have been misled about how long his, quote, opportunity to submit his discharge rebuttal would be. I really do think those two issues go hand in hand. And so the board's decision can be read, I think, fairly as addressing both of those issues. But it seems like that's—for Harmon-Serra purposes, that doesn't seem like the key paragraph because as I read it, that doesn't say anything about Harmon-Serra. That comes at the end of the next paragraph on page 255, the last sentence before paragraph 11. It says, moreover, the board finds that any negative effect that procedural error could theoretically have had on the appellant's character of the discharge and narrative reasons for discharge has been corrected. Oh, no, I'm sorry, that's not. There's another—the language is mostly similar between the two decisions. I know in the first decision, which goes back to JA39 to JA40, they actually use the term harmless error specifically. And I think that may be what you're referring to. Yeah, that's what I'm recalling, yeah. And then they drop a footnote there and cite a few cases that talk about how if an error doesn't substantially affect the outcome, it's harmless. And that really is what happened here because in Mr. Huffman's challenge to his discharge, his theory of the case at that point in time was based on his claim that he was the victim of unlawful discrimination and reprisal on account of his religion. That was really what his challenge was about. Those allegations have completely disappeared from Mr. Huffman's claims in this appeal and in the district court proceedings, but that was what his theory was. And at that point in time, as I said before, he had an opportunity to retain counsel during the board's review. He did not. So any of these additional arguments that Mr. Huffman and his lawyers are coming up with now in their reply brief on appeal are much too late. He had an opportunity to argue, for example, that the indefinite no contact order was unlawful, and that was never an argument that they made to the board. Let me just ask one follow-up question just so I understand it, and then I'm done with this line of inquiry. So as I understood what you were saying in terms of the species of harmless error argument you're making, what you're saying is that you think what we ought to do is find that the agency was correct in determining that any procedural error was harmless. Not that, as a matter of APA review, we would conclude that any error by the board was not prejudicial, but that what we should do is give effect to the board's determination that any error during the discharge proceedings was harmless. Yes, sir. And then if that's so, then we'd need to conclude that the board found that the errors were harmless because that's the thing to which we'd be giving effect. And for that, are you pointing to the sentence that says harmless error on page 40, or are you pointing to something else for that board determination? Or am I wrong in even asking you to point to something? Because as I understand it, we'd need to look at where the board found that something that happened in the discharge proceedings was harmless. Yeah, and I think these two paragraphs, paragraphs 12 and 13, they do go together. And the previous paragraph is similar to the one that we were looking at earlier in the second opinion where they discuss what constitutes an opportunity under the Coast Guard's regulations. I think the next paragraph, paragraph 13, flows from that. And a fair interpretation of the board's decision is that they considered the issue, they acknowledged that it appears that Mr. Huffman had been misled or confused about how long the opportunity would be, and they say that in paragraph 12, and nonetheless conclude that Mr. Huffman made no showing that even if he had the extra day and even if he had the assistance of counsel, it would have made any difference. And for that, you're relying on the sentence that says harmless error and drops the footnote? Yes. Okay. So we need to conclude that the harmless error sentence is the one to which we give effect and that that sentence encompasses everything including counsel opportunity? Yes. That's the way to look at it? Okay. Yes. I understand what you're saying. Anything further? If there are no further questions, we ask the Court to affirm. Thanks. Thank you. All right. Counsel for appellant. We'll give you a couple of minutes. Thank you, Your Honor. May it please the Court again. You know, the appellant disagrees that that's what was written and that's the interpretation of the document. Reviewing JA 39 and 40 and those paragraphs, the focus is on the rebuttal statement. The entirety of what is happening here is the Board is focused on whether Petty Officer Huffman's statement would have made a difference. That is the genesis and interpretation of what the Board is focused on, not whether he had an opportunity to speak with counsel. And just from a layman's perspective, a counsel cannot be effective in giving any advice unless they consider the facts, the law relevant to the matter, the procedures involved, and then make some recommended course of action. If a counsel says that he's not available to do that, he's acknowledging that he can't engage in meaningful advice. And that's what we have in this case. And there is nowhere in any of these opinions that they address this idea that the command should have given him more time. It is mandatory. It wasn't discretionary. The Board's determination did not consider that, review that, or rely upon that. They were solely focused on whether Petty Officer Huffman's statement without counsel, without the assistance of counsel, would have made a difference. Their conclusion was no, and therefore they found that to be harmless error. We believe that to be error, Your Honor. So that is not consistent with the reading of the context of the documents. You know, the indication by government counsel that there are serious issues here, there are. We have false statements by the command. We have proof that the command lied in the investigation. This is what's in the record. So are the false official statements made by people that are trying to kick out Petty Officer Huffman, sailor of the quarter, this guy who served honorably for eight years, are those not to be considered? If a close scrutiny of this and a fair reading of what occurred, we believe would have resulted in a different outcome, and the key to that difference would have been the availability of counsel, which he was deprived of, and that was never considered properly by the Board. What about the statement at JA40, paragraph 14, that discusses the fact that the applicant has not proven by preponderance of the evidence that the RA4 reenlistment code is erroneous or unjust, and the discretionary nature, I guess, or the discretionary authority with respect to setting the reenlistment code? Yes, sir. So on one level, is there discretion to administer a discharge? The answer is yes. Is there a discretion to put a narrative reason? The answer is yes. All of these issues relating to the separation of a member are discretionary. The problem is when that discretionary is not based on the facts, and in this case the facts and the evidence was disregarded. So you cannot get to a fair discretionary analysis if you haven't gotten there through a proper consideration of the facts. And so while it is true that it is a discretionary function, the facts in this particular case, you cannot get to that conclusion that that was an available option. And even the Commandant of the Coast Guard disagreed with that because she upgraded his service to honorable and did other corrections. So we believe that the record, had it been properly considered and the impact of it would have changed the outcome of this. Or he would have been allowed to EAS to his natural conclusion, which would have been a few months away, and he would have been eligible for reenlistment. Whether they would have reenlisted him or he could have reenlisted in other services is another matter. It's just that his eligibility was taken away improperly through the disregard of the facts and the procedures here. All right, thank you. Thank you, Your Honor. We'll take your case under advisement.
judges: Rogers, Srinivasan, Wilkins